DUNBAR & CO. v. LOCKE.

Whether a sale of spirituous liquor, completed in another state by delivery to a carrier, was solicited in this state, within the meaning of Gen. Laws, *c.* 109, *s.* 18, by the vendor's travelling agent, may be a question of mixed law and fact, for the determination of the jury under proper instructions.

Failure to object at the trial to the submission of the question to the jury may be a waiver of the objection.

A person who solicits or takes orders in this state for spirituous liquors to be delivered in another state, knowing, or having reasonable cause to believe, that if delivered they will be transported to this state and sold here by the purchaser in violation of law, cannot recover the price in this state.

ASSUMPSIT, for goods sold and delivered. Jury trial. The plaintiffs were merchants, licensed to sell spirituous liquor in Boston, Mass., and the defendant was a merchant, selling ·spirituous liquor in Seabrook, N. H., but not a town agent. The plaintiffs sold spirituous liquors to the defendant, and delivered them at the depot of the Eastern Railroad in Boston. In the latter part of March, 1881, one Carter, a commercial traveller and agent of the plaintiffs, called upon the defendant at Seabrook and solicited an order for liquors and other goods in behalf of the plaintiffs. The defendant gave him a list of goods which he would buy if the plaintiffs would receive a quantity of cider in part payment, at twenty-five cents a gallon. Carter sent the list to the plaintiffs

with the defendant's proposition. March 29 the plaintiffs wrote the defendant, rejecting the offer on account of the price asked for the cider. March 30 the defendant wrote the plaintiffs, stating the quantity of cider he had for sale. March 31 the plaintiffs wrote the defendant, asking for a sample of the cider. April 4 the plaintiffs wrote the defendant, acknowledging the receipt of the sample, and offering fifteen cents a gallon. April 6 the defendant wrote the plaintiffs that he would take sixteen and two thirds cents a gallon, and the plaintiffs accepted the offer the same day. The parties had further correspondence with reference to the list of liquors taken by Carter, some changes were made in it, and the sale was concluded April 9, 1881.

There are two questions,—first, whether the plaintiffs can recover for the liquors; second, whether the defendant can recover for the cider. The jury found that the sale of the liquors was solicited by Carter, and that the plaintiffs had reasonable cause to believe that they would be sold by the defendant in New Hampshire in violation of the laws of New Hampshire. The plaintiffs contend that the writings show the sale was not solicited by Carter.

*J. S. H. Frink* and *C. Page*, for the plaintiffs.

*Marston & Eastman*, for the defendant.

STANLEY, J. The first point taken by the plaintiffs is, that it was error to submit to the jury the question whether the sale of April 9 was solicited by Carter, the plaintiffs' agent. No such objection was taken at the trial; and if it then could have availed the plaintiffs, it now comes too late. The plaintiffs could not take their chances of a verdict in their favor, and, finding it against them, insist upon an objection which might have been obviated if seasonably taken. On the evidence, the question was one of mixed law and fact, and as such was for the jury under proper instructions. *Kent v. Tyson*, 20 N. H. 121.

The sale was completed in Massachusetts by delivery to a carrier,—and if it had not been solicited by Carter in this state, there would, upon the authorities, be no doubt of the plaintiffs' right to judgment; but the contention is, that Carter's act in soliciting the order was illegal, and therefore the plaintiffs cannot recover. The statute provides that " If any person shall, within this state, solicit or take any order for any spirituous liquor, to be delivered at any wharf, depot, or other place without this state, knowing or having reasonable cause to believe that if so delivered the same will be transported to this state and sold in violation of the law thereof, he shall be fined." G. L., c. 109, s. 18. The plaintiffs' agent came into this state and solicited the order; and although, in a technical sense, the sale was made in Massachusetts, and was legal

there, the question is whether we are bound to enforce it here. It is not claimed that we are under an absolute legal obligation to enforce foreign contracts. Whatever obligation we are under arises from comity. "Assuredly one state is bound to act toward another as neighbors should to each other." Vatt., Ingraham's notes, 173. But this does not require us to enforce contracts which are repugnant to the policy of our law. Sto. Conf. Law, ss. 29, 32, 33, 37, 38; *Robinson* v. *Bland*, 2 Burr. 1077, 1079; *Bank* v. *Earle*, 13 Pet. 519, 589. This is the doctrine applicable to contracts with foreign countries, and the same law of comity prevails among the several states of the Union. *Bank* v. *Earle*, 13 Pet. 593. This does not require us to enforce all contracts made outside of our jurisdiction, even though they are valid where made. If the plaintiff does not come with clean hands, if he is in any respect a *particeps criminis*, he cannot successfully invoke our aid to enforce his contract. 1 Bish. Cr. L., ss. 11, 256, 257; Whar. Confl. Law 35, 340–344; Bro. Leg. Max. The verdict of the jury establishes the fact that the plaintiffs at the time of the sale had reasonable cause to believe that the defendant's purchase was with a view to the violation of our law. Although it was not strictly a part of the contract that the goods should be sold here in violation of law, yet the sale was made with reasonable cause to believe that our law would be violated, and with intent to enable the purchaser to violate it. *Bank* v. *Curren*, 36 Iowa 555. The defendants do not come with clean hands. They are *particeps criminis*. The solicitation by their agent was in legal effect a solicitation by themselves. If either of the plaintiffs had personally done what their agent did, they would have been liable to the penalty imposed by statute against soliciting or taking orders for liquors to be resold here.

Although the sale was lawful in Massachusetts, and is not indictable here because it was completed by delivery to a carrier in Massachusetts, it was unlawfully solicited here, and was effected by means of the criminal offence of solicitation committed in this state. Being so effected, it is not entitled to the protection of the state with whose policy it is in conflict.

We have not overlooked the decisions in *Hill* v. *Spear*, 50 N. H. 253, *Corning* v. *Abbott*, 54 N. H. 469, *Opinion of the Justices*, 25 N. H. 537, 539, 540, and the numerous cases on which those decisions are based; but since those decisions were announced the legislature have passed a statute making it an offence to let or suffer buildings to be used for the unlawful sale of liquor, and making the vendor liable for any injury done to the person or property of another in consequence of liquor unlawfully sold or furnished (Laws 1870, c. 3), and it is now an indictable offence to solicit or take an order for the sale of liquors outside of the limits of the state to be resold within the state in violation of law. Laws 1876, c. 33. We are not called upon to overrule or dissent from the law as declared in those

cases. In view of the laws then in force, and those enacted since, there can be no question that the design of the legislature was by all constitutional means to prevent a business being carried on here which they believed was disastrous to the interests and welfare of the people of the state. The general scope of the laws of 1870 and 1876, as well as those to which they were supplementary, " warrants the belief that it was their intention to add something to the perils of a traffic, which, though prohibited by law, they may have seen reasons to suppose was still carried on in defiance of the law, to the detriment of public morals and the general welfare of the state." *Bodge* v. *Hughes,* 53 N. H. 614, 617.

The plaintiffs had knowledge that the liquors which they seek to recover for in this suit were sold by them to be resold in violation of law. Their sale of the liquors was with reference to the defendant's illegal purpose, and for the purpose of enabling him to effect it. The following remarks of *Bellows,* J., in the dissenting opinion in *Hill* v. *Spear,* 50 N. H. 253, 292, apply with much force to this case: " In truth, when liquor dealers across the line of our state are habitually aiding our citizens in the violation of laws made for the protection not only of the public morals but of the very lives of our people, there is an impudence in coming to our courts and asking them to enforce contracts growing out of such traffic that is almost sublime. It is obvious that they are doing all they can do to render inoperative a law which the courts are bound to enforce so long as it remains on the statue book; and then they ask the same courts to protect them in these efforts to break down our laws by treating their contracts as meritorious and legal. To do this would be extending the doctrine of comity to a point altogether inconsistent with public safety."

Both parties understood that the defendant's cider was to be taken in part payment for the plaintiffs' liquors. On that state of facts the question whether the plaintiffs can recover for the liquors is immaterial. The cider was part payment, and the defendant cannot recover back what he has paid. It was not illegal to pay for the liquors. *Caldwell* v. *Wentworth,* 14 N. H. 436.

*Judgment on the verdict for the defendant for costs.*

DOE, C. J., did not sit: the others concurred.